IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02569

JOHN MEGGS, an Individual, and
ACCESS 4 ALL, INC., a Florida Not for Profit Corporation

        Plaintiffs,

vs.

U.S. MOTELS FEDERAL, LLC, a Colorado Limited Liability Company

        Defendant.

_____/

# COMPLAINT

## Introduction

Plaintiffs, JOHN MEGGS, an individual, and ACCESS 4 ALL, INC., a Florida Not for Profit Corporation, ("Plaintiffs" or "Plaintiffs") on their behalf and on behalf of all other mobility impaired individuals similarly situated hereby sues the Defendant, U.S. MOTELS FEDERAL, LLC, a Colorado Limited Liability Company ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the Colorado Anti-Discrimination Act, C. R. S. § 24-34-601 et seq. ("CADA").

## The Parties

1.     Plaintiff, JOHN MEGGS, is an individual over eighteen years of age and is otherwise sui juris.

2.     Plaintiff, ACCESS 4 ALL, INC., is a Florida Not for Profit Corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation.

This entity was formed under the laws of the State of Florida and remains in good standing.

3. Defendant, U.S. MOTELS FEDERAL, LLC, a Colorado Limited Liability Company, owns or operates a place of public accommodation, in this instance a hotel, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

## Jurisdiction and Venue

4. Defendant's property, known as the Comfort Suites Near Downtown Denver ("Comfort Suites"), is a hotel located at 620 Federal Blvd, Building A, Denver, CO 80204, within Denver County ("Subject Property").

5. Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

6. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

8. The Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

9. Plaintiff, JOHN MEGGS, is an individual with disabilities as defined by and pursuant to the ADA. Mr. Meggs is a paraplegic, with no use of his legs, stemming from a severe spinal cord

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104

injury and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk or stand. Mr. Meggs, at all times, requires the use of a wheelchair to ambulate.

10. Plaintiff organization, ACCESS 4 ALL, INC., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

## Factual Background

11. Mr. Meggs is an ADA advocate and a champion for disabled rights. Since becoming aware of his rights, and their constant infringement, he has dedicated his life to ensuring that he, and others like him, have full and equal enjoyment of public accommodations.

12. Mr. Meggs continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, become arduous and even dangerous.

13. The barriers to access that Mr. Meggs experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, and non-accessible guestrooms (even when designated "accessible" or "handicapped"). He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past, often to no avail. Thus, he now finds his redress through the ADA, just as Congress intended.

---

[3] as defined by 28 CFR § 36.105(b)(1-2)

14. Mr. Meggs has visited Comfort Suites on multiple occasions, his last visit as a guest occurring on or about April 14, 2022.  Mr. Meggs stayed at Comfort Suites as an overnight guest and bone fide purchaser to avail himself of the goods and services offered to the public within but found that the Subject Property was littered with violations of the ADA, both in architecture and in policy. Mr. Meggs subsequently returned to the exterior of the property in August 2022, but no change in conditions was observed.

15. Although a California resident, Mr. Meggs travels to Colorado regularly, both for pleasure and for business. The members of Access 4 All, Inc. are spread across the United States and have found that Colorado is a desirous place to meet; both due to its geographic location and the breadth of activity that it offers.

16. Mr. Meggs has a reservation to return to Comfort Suites on January 9, 2023; he also intends to return on or about April 1, 2023, during a subsequent trip to the Denver area. He intends to revisit Comfort Suites not only as an overnight guest but also to monitor any progress made with to respect to ADA compliance - he sincerely hopes that his return is not made in vain.

17. Mr. Meggs has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at Comfort Suites.

18. The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiffs have actual notice and reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

19. Thus, Plaintiffs have a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced which are listed in paragraph 24 of this complaint.

20.     Following any resolution of this matter Plaintiffs will ensure that the Subject Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in the parties' settlement agreement or as ordered by this Court.

**COUNT I**

**Violation of Title III of the
Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.**

21.     Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

22.     The Defendant has discriminated against the Plaintiffs, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by the ADA.

23.     A preliminary inspection of the Subject Property has shown that violations of the ADA exist. That inspection, performed by Plaintiffs' expert, further revealed that the remediation of all violations/barriers listed in paragraph 24 are both technically feasible and readily achievable.

24.     The following are architectural barriers and violations of the ADA that Mr. Meggs has personally encountered during his last stay at the Comfort Suites:

**Parking and Exterior Accessible Route**

a. The designated accessible parking spaces throughout the Subject Property contain slopes and cross-slopes which exceed the allowable limits; in violation of the ADAAG and Section 502 of the 2010 ADA Standards. Sloping and cross-sloping present Mr. Meggs with a tipping hazard. To avoid these obstacles, he was forced to park away from the facility in a level area and then travel around obstacles and through the traffic area of the lot to

  reach the entrance. The remediation of this barrier is both technically feasible and readily achievable.

b. The designated accessible parking spaces at the Subject Property lack compliant access aisles, in violation of the ADAAG and Section 502 of the 2010 ADA Standards. Due to the lack of access aisles and as detailed above, Mr. Meggs was forced to park away from the hotel so that he could freely access his vehicle; he was then forced to travel through the traffic area of the parking lot to reach the building. The remediation of this barrier is both technically feasible and readily achievable.

c. Comfort Suites fails to provide the requisite number of compliant accessible parking spaces and van-accessible parking spaces, a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking spaces and as detailed above, Mr. Meggs was forced to park away from the hotel so that he could freely access his vehicle; he was then forced to travel through the traffic area of the parking lot to reach the building. The remediation of this barrier is both technically feasible and readily achievable.

d. Comfort Suites fails to provide a safe and accessible route to and from the porte cochere which has impeded Mr. Meggs' ability to safely load/unload from vehicles in the passenger loading zone; a violation of ADAAG Section 4.6.6 and Section 503 of the 2010 ADA Standards. The passenger loading zone contains sloping and cross-sloping which has presented Mr. Meggs with a tipping hazard and prevented him from making use of this area. The remediation of this barrier is both technically feasible and readily achievable.

e. The accessible parking spaces throughout the Subject Property, are improperly marked; a violation of ADAAG Section 4.6 and Section 502.6 of the 2010 ADA Standards. Due to the lack of signage Mr. Meggs was forced to be diligent in finding the accessible parking

spaces (which he could not use anyway). The remediation of this barrier is both technically feasible and readily achievable.

**Entrance Access and Path of Travel**

    f. The exterior accessible route throughout the Subject Property is impeded by ramps that lack level landings at the top and bottom of each run; in violation of the ADAAG and Sections 402 and 403 of the 2010 ADA Standards. Mr. Meggs was impeded by the lack of level landings while travelling from the parking lot to the facility. The remediation of these barriers is both technically feasible and readily achievable.

    g. The exterior accessible route throughout the Subject Property is impeded by cross-sloping which has presented Mr. Meggs with a tipping hazard that could cause a fall and damage his wheelchair; a violation of the ADAAG and Sections 404 and 405 of the 2010 ADA Standards. Mr. Meggs was endangered by the cross-slopes while travelling from the parking lot to the facility. The remediation of this barrier is both technically feasible and readily achievable.

    h. Mr. Meggs could not enter the Comfort Suites without assistance due to the lack of directional signage, a violation of the ADAAG and Section 216.6 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

**Access to Goods and Services**

    i. Comfort Suites fails to make reasonable accommodations in policies, practices, and procedures to provide for the full and equal enjoyment of disabled individuals nor does it maintain the elements which are required to be accessible and usable by persons with disabilities as required by 28 CFR § 36.211. For example, a failure to remove debris and

7

      stored goods on counter tops and a failure to maintain clearance to accessible elements and paths of travel prevented Mr. Meggs from freely traveling about the hotel and using the accessible elements; which include but are not limited to telephones, desks, tables, and other elements required to be accessible. This failure in policy is easily correctable but must be monitored into the future, as this type of discriminatory practice is often recurring and continuing.

j. Mr. Meggs could not access counters or workstations as they were mounted beyond his reach; a violation of the ADAAG Section 7.2(1) and Section 308 of the 2010 ADA Standards. These barriers have prevented Mr. Meggs from comfortably accessing these elements within the hotel; their remediation is both technically feasible and readily achievable.

k. Mr. Meggs could not access the dining and lounge tables nor the workstations as they lack the proper knee and toe clearance necessary for him to approach; these barriers are a violation of the ADAAG and Sections 308 and 902 of the 2010 ADA Standards. Due to the foregoing Mr. Meggs could not make use of the writing surfaces nor dine in a comfortable manner. The remediation of these barriers is both technically feasible and readily achievable.

**Lobby Restrooms**

l. The restroom located within the lobby area is outfitted with improper door hardware; in violation of ADAAG Section 4.13.9 and Section 404 of the 2010 ADA Standards. Mr. Meggs could not freely access the lobby restroom without assistance. The remediation of this barrier is both technically feasible and readily achievable.

m. The lobby restroom contains dispensers which are mounted beyond Mr. Meggs' reach, a

    violation of the ADAAG and Section 308 of the 2010 ADA Standards. Mr. Meggs was unable to make use of the improperly mounted dispensers. The remediation of this barrier is both technically feasible and readily achievable.

n. Mr. Meggs could not make use of the mirror within the lobby restroom due to its improper height, a violation of the ADAAG and Section 306 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

o. The toilet seats within the lobby restroom are improperly designed and unusable by Mr. Meggs; violating the ADAAG Sections 604 of the 2010 ADA Standards. Mr. Meggs could not freely access the toilet without assistance due to the improper seat height. The remediation of this barrier is both technically feasible and readily achievable.

p. Mr. Meggs could not access the flush control on the lobby restroom toilet due to its improper location. The flush control is mounted on the wall-side, of violation of ADAAG and Section 604 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

**Accessible Guestrooms/Suites**

q. Accessible guestrooms/suites are not held for use by persons with disabilities until all other rooms in the same price category have been purchased, this is a violation of 28 CFR § 36.302. This failure in policy is easily correctable but must be monitored into the future, as this type of discriminatory practice is often recurring and continuing.

r. Mr. Meggs' accessible guestroom contained a tub with improper faucet controls, no shower wand, improper/missing grab bars; in violation of the ADAAG and Sections 608, 609, and 610 of the 2010 ADA Standards. Mr. Meggs could not properly bathe due to improperly located shower controls, as they are mounted well beyond his reach, while the other

9

violations hindered him from doing so comfortably even with assistance. The remediation of these barriers is both technically feasible and readily achievable.

s.  The toilet within the guestroom restroom contains improperly mounted grab bars; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Mr. Meggs could not safely transfer to the toilet nor use the restroom safely/comfortably without assistance. The remediation of this barrier is both technically feasible and readily achievable.

t.  Due to the location of the beds Mr. Meggs was unable to maneuver freely around them nor transfer to either one; in violation of the ADAAG and Section 1008 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

u.  Mr. Meggs could not make use of the privacy latch (due to its improperly mounted location), a violation of the ADAAG and Sections 308 and 404 of the 2010 ADA Standards. This ADA violation is of great concern as Mr. Meggs could not latch the door without assistance. The remediation of this barrier is both technically feasible and readily achievable.

v.  The drapery wands within the guestrooms were improperly mounted and thus Mr. Meggs could not make use of them, a violation of the ADAAG and Sections 308 and 309 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

w.  Mr. Meggs could not make use of the mirror within the guestroom restroom due to its improper height, a violation of the ADAAG and Section 306 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

x.  The guestroom restroom contains dispensers which are mounted beyond Mr. Meggs' reach,

a violation of the ADAAG and Section 308 of the 2010 ADA Standards. Mr. Meggs was unable to make use of the improperly mounted toilet tissue dispenser. The remediation of this barrier is both technically feasible and readily achievable.

25. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[4]

26. The discriminatory violations described in paragraph 24 may not be an exhaustive list of the ADA violations that exist at Comfort Suites, but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Meggs. Plaintiffs require thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Subject Property in violation of the ADA/CADA.

27. Plaintiffs, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

28. Defendant has discriminated against Plaintiffs, and all those similarly situated, by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages

---

[4] 28 CFR § 36.104

and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

29. Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to remove architectural barriers, and communication barriers that are structural in nature.[5]

30. Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[6]

31. Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[7]

32. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[8] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

33. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Subject Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Meggs, who use wheelchairs. An alteration is deemed

---

[5] 42 U.S.C. § 12181(b)(2)(A)(iv)
[6] 42 U.S.C. § 12181(b)(2)(A)(ii)
[7] 42 U.S.C. § 12181(b)(2)(A)(iii)
[8] as defined by 28 CFR § 36.401(a)(2)

to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[9] Discovery in this matter will reveal if and when such alterations have taken place at the Subject Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Subject Property into compliance with the ADA.

34. Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

35. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012 must comply with the 1991 Standards.

   b. Elements that have existed prior to and have not been altered since on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

   c. Elements that have been altered on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

36. Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile.

---

[9] 28 CFR § 36.402(a)(2)

In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

37.     Plaintiffs are without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted.  The public interest would not be disserved by the issuance of a permanent injunction.

38.     Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

39.     Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiffs injunctive relief, including an order to require the Defendant to alter Comfort Suites and make the Subject Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the Defendant cure their violations of the ADA.[10]

**WHEREFORE,** Plaintiffs respectfully request:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to cure all ADA violations existing at the Subject Property listed herein or later found through discovery; to make the Subject Property accessible to and usable by individuals with disabilities; and to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or

---

[10] 42 U.S.C. § 12188(b)(2)

    otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Subject Property - as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
### Violation of Colorado Anti-Discrimination Act, C.S.R. § 24-34-601 et seq. (CADA)

40. Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

41. The individual Plaintiff, John Meggs, is a disabled individual as defined by C.S.R. § 24-34-301(2.5).

42. Defendant's facility is a place of public accommodation as defined by C.S.R. § 24-34-601(1).

43. Colorado law provides that no person shall be discriminated against in regards to public accommodations on the basis of disability.[11]

44. Pursuant to C.S.R. § 24-34-602(1) Mr. Meggs is authorized to bring a private action in any court of competent jurisdiction and to receive monetary damages.

45. Pursuant to C. S. R. § 24-34-602(1)(b) a person who violates provisions of the CADA based on a disability "shall be subject to the provisions of section 24-34-802." C. S. R. § 24-34-

---

[11] C.S.R. § 24-34-601(2)(b)

802 allows for a court order requiring compliance with the provisions of the violated section of the CADA, recovery of actual monetary damages, a statutory fine not to exceed three thousand five hundred dollars ($3,500.00), and an award of attorney fees and costs.

46. Pursuant to 3 CCR 708-1:60.1(A); the CADA, "is substantially equivalent to Federal law, as set forth in the Americans with Disabilities Act, as amended, and the Fair Housing Act concerning disability."

47. Pursuant to C.S.R. § 24-34-802(4); "a court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'American with Disabilities Act of 1990', 42 U.S.C. § 12101 et seq., and its related amendments and implementing regulations."

48. As set forth above, Defendant has violated the Colorado Anti-Discrimination Act by denying Mr. Meggs, and all other disabled individuals, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations afford to the public at a place of public accommodation.

49. As a result of the foregoing discrimination, through repeated exposure to architectural barriers and other harmful conditions, Mr. Meggs has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation.

**WHEREFORE**, Plaintiffs respectfully demand:

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendants are in violation of the CADA.

c. An injunction ordering Defendant to immediately comply with the CADA by removing all architectural barriers listed herein or later found through discovery.

    d.  A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

    e.  An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Subject Property - as required by the CADA.

    f.  Other relief that this Court deems just and proper and is allowable under the CADA.

Respectfully submitted on this 30th day of September 2022,

                                                      */s/ Jon G. Shadinger Jr.*
                                                      Jon G. Shadinger Jr., Esq.
                                                      Shadinger Law, LLC
                                                      717 E. Elmer Street, Suite 7
                                                      Vineland, NJ 08360
                                                      Direct (609) 319-5399
                                                      Office (609) 236-3211
                                                      Fax (609) 900-2760
                                                      js@shadingerlaw.com
                                                      *Attorney for Plaintiffs*